UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CHRISTOPHER L. EDWARDS | CIVIL ACTION NO. 16-cv-00871 |
| VERSUS | JUDGE DOHERTY |
| THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY | MAGISTRATE JUDGE HANNA |

# REPORT AND RECOMMENDATION

Currently pending is the motion for remand (Rec. Doc. 6), which was filed by the plaintiff, Christopher L. Edwards. The motion is opposed. The motion was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court. (Rec. Doc. 16). For the following reasons, it is recommended that the motion be DENIED.

## BACKGROUND

This lawsuit was originally filed in St. Landry Parish, Louisiana, and was then removed by the defendant to this forum. According to the state-court petition, the plaintiff, Christopher L. Edwards, was a lawyer, licensed to practice in the State of Louisiana.[1] Mr. Edwards allegedly purchased a disability insurance policy from the defendant, Northwestern Mutual Life Insurance Company. During the course of the policy period, the plaintiff allegedly "became disabled due to dementia associated

---

[1] According to the defendant, the plaintiff is locally known as Luke Edwards.

with a number of health problems including neurological deficits." (Rec. Doc. 1-3 at 2). The plaintiff claims that he was examined by a neuropsychologist and a psychiatrist, who both allegedly opined that his disability precludes him from practicing law.

Mr. Edwards allegedly presented evidence of his disability to Northwestern Mutual, and disability benefit payments began in November 2014 at the rate of $7,000 per month. The plaintiff alleged, however, that Northwestern Mutual unilaterally reduced the payments to $5,200 per month in December 2015 and January 2016, then unilaterally discontinued making the payments without providing the plaintiff with a valid explanation for doing so. Mr. Edwards alleged that Northwestern Mutual's reduction then cessation of benefits was arbitrary, capricious, and without a factual or legal basis. In this lawsuit, Mr. Edwards seeks the reinstatement of benefits and the recovery of statutory penalties and attorneys' fees.

Northwestern Mutual removed the action, contending that the federal court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional minimum. The plaintiff responded to the removal with the instant motion to remand. There is no dispute that the parties are diverse in citizenship, but Mr. Edwards argues that the amount in controversy is less than the jurisdictional threshold.

## LAW AND ANALYSIS

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[2] Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[3] and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.[4] The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction.[5] Therefore, when an action is removed from state court, the removing party bears the burden of proving that federal jurisdiction exists.[6] In this case, the defendant must bear that burden.

### A. DIVERSITY OF CITIZENSHIP

In his complaint, the plaintiff alleged that he is a Louisiana resident and domiciliary. (Rec. Doc. 1-3 at 1). The citizenship of a natural person is determined

---

[2] *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010).

[3] 28 U.S.C. § 1331.

[4] 28 U.S.C. § 1332.

[5] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[6] *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995), *cert. denied*, 516 U.S. 865 (1995).

by the state in which he is domiciled.[7]  Therefore, this Court finds that the plaintiff is a Louisiana citizen.

In its removal notice, the defendant alleged that it was incorporated in the State of Wisconsin and has its principal place of business in Wisconsin.  (Rec. Doc. 1 at 2).  A corporation's citizenship is determined by its state of incorporation and the state of its principal place of business.[8]  The defendant's allegations were sufficient for the removal notice, and they were not challenged in the plaintiff's motion to remand.  Accordingly, this Court finds that the defendant is a Wisconsin citizen.  Because the parties are citizens of different states, this Court finds that the first requirement for subject-matter jurisdiction is satisfied.

**B.    THE AMOUNT IN CONTROVERSY**

In his motion for remand, the plaintiff challenged the defendant's contention that the amount in controversy exceeds the jurisdictional minimum.  The amount in controversy is the sum claimed by the plaintiff in his complaint if the claim was apparently made in good faith.[9]  To justify remand, "it must appear to a legal certainty

---

[7]    *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

[8]    28 U.S.C. § 1332(c)(1).

[9]    *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253; *De Aguilar v. Boeing Co.*, 47 F.3d at 1408; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5th Cir. 1992).

that the claim is really for less than the jurisdictional amount."[10] When the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.[11] This burden can be satisfied either by demonstrating that the amount in controversy is facially apparent from the plaintiff's pleadings or by setting forth the facts in controversy, with summary-judgment-type evidence, that support a finding of the requisite amount.[12] "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount in controversy exceeds [the jurisdictional amount]."[13] Therefore, a showing that damages "could well exceed" the jurisdictional amount or that there is a "possibility" that the plaintiff could recover more than the jurisdictional amount is insufficient to carry the removing defendant's burden.[14] Instead, the removing

---

[10] *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253, quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).

[11] *Simon v. Wal–Mart Stores*, 193 F.3d 848, 850 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

[12] *Simon v. Wal–Mart Stores*, 193 F.3d at 850; *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1335.

[13] *De Aguilar v. Boeing*, 47 F.3d at 1412 (emphasis in original).

[14] *Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1336; *Fontenot v. Granite State Ins. Co.*, No. 08 CV 1296, 2008 WL 4822283, at *3 (W.D. La. Nov. 3, 2008).

defendant must establish that it is more likely than not that the jurisdictional amount is satisfied.[15] Applying these principles, the district court must first examine the complaint to determine whether it is facially apparent that the plaintiff's claims exceed the jurisdictional threshold; if it is not facially apparent, the court may then rely on summary-judgment-type evidence to ascertain the amount in controversy.[16] The facts supporting jurisdiction are judged as they exist at the time of removal,[17] and any doubts as to the propriety of removal are construed strictly in favor of remand.[18]

C. **THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL THRESHOLD**

Mr. Edwards seeks to recover the amount due under the defendant's insurance policy – which he alleged to be $7,000 per month – and he also seeks to recover statutory penalties and attorneys' fees. In actions seeking sums due under an insurance policy, when determining if the jurisdictional amount exists, courts consider not only the amounts allegedly due under the policy, but also any potential

---

[15] *Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1336; *Fontenot v. Granite State Ins. Co.*, 2008 WL 4822283 at *3.

[16] *Luckett v. Delta Airlines*, 171 F.3d at 298; *Allen v. R & H Oil & Gas Co.*, 63 F.3d at 1335.

[17] *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d at 723; *Simon v. Wal–Mart Stores*, 193 F.3d at 851 and n. 10; *Allen v. R & H Oil and Gas Co.*, 63 F.3d at 1335; *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir.1995).

[18] *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d at 723.

attorneys' fees and penalties for which the insurer may be liable.[19] In this case, Mr. Edwards seeks to recover statutory penalties under both La. R.S. 22:1892 and La. R.S. 22:1973.[20]

La. R.S. 22:1892(B)(1) mandates that insurers pay penalties equal to fifty percent of the insured's damage amount (the contractual amount found due), or $1,000, whichever is greater, plus costs and reasonable attorneys' fees when the insurer arbitrarily fails to pay funds within thirty days after receiving the plaintiff's proof of loss.[21] La. R.S. 22:1973 imposes a duty of good faith and fair dealing on insurers, and mandates that an insurer that breaches its "duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims" is subject to penalties "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."[22] The penalty allowed under La. R.S. 22:1973 is based not on the contractual amount owed but, rather, on the damages sustained by the

---

[19] *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d at 1253.

[20] These statutes were formerly designated as La. R.S. 22:658 and La. R.S. 22:1220, respectively. No change was made in the substance of either statute when they were redesignated; therefore, cases interpreting La. R.S. 22:658 and La. R.S. 22:1220 remain relevant.

[21] See, also, *Durio v. Horace Mann Ins. Co.*, 2011-C-0084 (La. 10/25/11), 74 So.3d 1159, 1170.

[22] See, also, *Durio v. Horace Mann Ins. Co.*, 74 So.3d at 1170–71.

insured as a result of the insurer's breach of its duty of good faith and fair dealing.[23] However, a plaintiff may be awarded penalties under only one of those two statutes for the same conduct, whichever is greater.[24]

When a breach of La. R.S. 22:1892 has occurred, an award of attorney's fees is mandatory.[25] A plaintiff may also be awarded attorney's fees under La. R.S. 22:1892 if he is awarded penalties under La. R.S. 22:1973; however, such an award is discretionary.[26]

While Mr. Edwards argues that the amount in controversy is less than $50,000, Northwestern Mutual proposed a method of calculating Mr. Edwards's alleged damages based on the allegations set forth in the petition, which results in an amount in controversy that exceeds the jurisdictional minimum. This Court finds Northwestern Mutual's calculations to be persuasive, with one significant modification.

Mr. Edwards claims that he should have been paid $7000 per month for December 2015 and January 2016 but was only paid $5,200 for each of those two

---

[23] *Durio v. Horace Mann Ins. Co.*, 74 So.3d at 1170–71.

[24] *Calogero v. Safeway Ins. Co. of La.*, 99-C-1625 (La. 01/19/00), 753 So.2d 170, 174; *Kodrin v. State Farm Fire and Cas. Co.*, 314 Fed. App'x 671, 679 n. 29 (5th Cir. 2009).

[25] *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 174.

[26] *Calogero v. Safeway Ins. Co. of La.*, 753 So.2d at 174.

months. The difference is $1,800 per month, or $3,600. Mr. Edwards also claims that Northwestern Mutual discontinued paying benefits entirely in February 2016. This action was removed on June 22, 2016. Thus, he seeks to recover $7,000 per month for the months of February, March, April, May, and June 2016, covering the time period from the date on which the benefits allegedly stopped up to the time of removal, or $35,000. That figure must be added to the amount sought to be recovered for the two months in which reduced payments were allegedly paid, for a total amount of $38,600 in allegedly unpaid insurance benefits.

In addition to the unpaid benefits, Mr. Edwards seeks to recover penalties and interest under the cited statutes. If Mr. Edwards were to succeed on his claim under La. R.S. 22:1892, he would be entitled to recover fifty percent of the amount due under the insurance contract.[27] In other words, he would be entitled to recover fifty percent of $38,600 or $19,300. Adding this penalty to the $38,600 in claimed unpaid benefits, the amount in controversy rises to $57,900.

If Mr. Edwards were to succeed on his claim under La. R.S. 22:1973, he would be entitled to recover the amount of damages suffered as a result of the breach of the duties imposed on the insurer in the statute up to double the amount of the damages sustained. But a plaintiff must show proof of actual damages arising from the breach

---

[27] *Durio v. Horace Mann Ins. Co.*, 74 So.3d at 1170.

to recover more than $5,000. The plaintiff's petition does not allege an amount of such damages or allege facts substantiating damages exceeding $5,000. Similarly, the plaintiff's briefing does not suggest a means of calculating such damages. When no amount of damages is alleged, courts generally impose the $5,000 minimum penalty. Northwestern Mutual proposes that a $5,000 minimum penalty under La. R.S. 22:1973 should be added to the amount-in-controversy calculation in addition to the $19,300 penalty under La. R.S. 22:1892. This Court disagrees. Because the minimum penalty under La. R.S. 22:1973 is less than the damages that could alternatively be awarded under La. R.S. 22:1892, damages under La. R.S. 22:1973 would not also be awarded. Therefore, an additional $5,000 would not be added to the amount in controversy.[28]

If penalties were awarded under either La. R.S. 22:1892 or La. R.S. 22:1973, attorneys' fees may be recovered. Attorneys' fees are mandatory under the former statute and discretionary under the latter, but are susceptible of calculation in the same manner regardless of which penalty statute applies. Only a reasonable estimate of attorney's fees may be considered in assessing the amount in controversy.[29] Courts

---

[28] See, *Henderson v. Allstate Fire and Casualty Insurance Company*, 154 F.Supp.3d 428, 433 (E.D. La. 2015).

[29] *Smith v. Geico Indem. Co.*, No. 14-1150, 2014 WL 4540070, at *3 (E.D. La. Sept. 11, 2014); *Coburn v. Int'l. Paper Co.*, No. 12-2163, 2013 WL 4776481 at *2 (W.D. La. Sept. 4, 2013); Wright, Miller & Cooper, Federal Practice and Procedure § 3712 (4th ed.).

sometimes use the standard 33% of total recovery or one-third contingency fee arrangement when calculating attorneys' fees.[30] Alternatively, an evaluation of "the services needed to effect recovery, the degree of professional skill and ability exercised, the volume of work performed, the time devoted to the case, the result obtained, the amount in controversy, the novelty and difficulty of the questions involved"[31] may be used to determine an appropriate amount of attorneys' fees to be awarded. At least one court has awarded more in attorneys' fees than the amount owed under the insurance policy ($24,984.50 in attorneys' fees, $19,800 in policy benefits, and $37,800 in statutory penalties).[32]

Regardless of how the attorneys' fees are calculated, it is evident that the potential attorneys' fee award in this case suffices to push the amount in controversy over $75,000. Here, only $16,101 in attorneys's fees is required to exceed that threshold, while one-third of the total of the allegedly past-due insurance benefits plus the penalties would be greater than that amount, or $19,300. Under the

---

[30] See, *Washington v. Liberty Mut. Fire Ins. Co.*, No. 6:12CV0746, 2012 WL 3096046, at *3 (W.D. La. July 30, 2012), citing *Francis v. Travelers Ins. Co.*, 581 So.2d 1036, 1045 (La. App. 1 Cir., 1991). A 40% contingency fee was used in one court's calculation. *Gelvin v. State Farm Mut. Auto. Ins. Co.*, No. 12-734, 2012 WL 1354855, at *3 (E.D. La. Apr. 18, 2012).

[31] *Khaled v. Windham*, 94 CA 2171 (La. App. 1 Cir. 06/23/95), 657 So.2d 672, 680, writ dismissed, 95-C-1914, 95-C-1937 (La. 11/01/95), 661 So.2d 1369.

[32] *Dixon v. First Premium Ins. Group*, 2005 CA 0988 (La. App. 1 Cir. 03/29/06), 934 So.2d 134, 145, *writ denied*, 2006-C-0978 (La. 06/16/06), 929 So.2d 1291.

reasoning set forth in the cases cited above, an award of at least $16,101 is neither speculative nor a mere possibility.

Accordingly, Northwestern Mutual has established that it is facially apparent that the plaintiff's claims have a good faith value that exceeds the $75,000 jurisdictional threshold because it is more likely than not that the jurisdictional amount is satisfied. Once it is apparent that there is a sufficient amount in controversy for jurisdiction, the plaintiff can only defeat removal by establishing that it is legally certain that his claims are for less than $75,000.[33] Because Mr. Edwards has not filed a binding stipulation that limits recovery to less than $75,000 or set forth in his petition the declaration regarding federal-court jurisdiction permitted by Louisiana Civil Code Article 893, he has made no such showing. Therefore, to reiterate, this Court finds that the amount-in-controversy requirement for subject-matter jurisdiction is satisfied in this case, as is the diversity-of-citizenship requirement.

For these reasons, this Court finds that the court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332, and it is recommended that the plaintiff's motion to remand (Rec. Doc. 6) be DENIED.

---

[33] See *De Aguilar v. Boeing Co.*, 47 F.3d at 1411–1412.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana on this 11th day of October 2016.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE